UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| ISLAND LEASING, LLC,<br><br>　　　　　Appellant,<br><br>　vs.<br><br>ELIZABETH A. KANE; AAR SUPPLY CHAIN, INC.,<br><br>　　　　　Appellees.<br>_____<br>ELIZABETH A. KANE, TRUSTEE,<br><br>　　　　　Cross-Appellant,<br><br>　vs.<br><br>ISLAND LEASING, LLC; AAR SUPPLY CHAIN, INC.,<br><br>　　　　　Cross-Appellees.<br>_____ | CIV. NO. 19-00655 LEK-WRP<br><br><br><br><br><br><br><br><br>CIV. NO. 19-00681 LEK-WRP |

**ORDER AFFIRMING IN PART, REVERSING IN PART
AND REMANDING BANKRUPTCY COURT ORDER**

　　　　On November 25, 2019, the bankruptcy court issued its Memorandum of Decision after Trial ("Bankruptcy Decision"). [Certificate of Readiness, Notice of Appeal and Statement of Election, filed 1/7/20 (dkt. no. 3-1), Exh. A (Bankr. Decision).] On December 9, 2019, the bankruptcy court transmitted Appellant/Cross-Appellee Island Leasing, LLC's ("Island Leasing") notice of appeal of the Bankruptcy Decision

("Appeal").  [Dkt. no. 1.]  On December 23, 2019, the Ninth Circuit Bankruptcy Appellate Panel transferred the appeal from the Bankruptcy Decision by Appellee/Cross-Appellant Elizabeth A. Kane, Bankruptcy Trustee ("Trustee").  [CV 19-00681 LEK-WRP, dkt. no. 1.]  On February 19, 2020, the appeals were consolidated.  [EO: Court Order: 1) Consolidating Cases; and 2) Setting Briefing Schedule, filed 2/19/20 (dkt. no. 14).]  On February 28, 2020, Island Leasing filed its opening brief, and on March 30, 2020, the Trustee filed her Principal and Response Brief.  [Dkt. nos. 15, 18.]  On April 29 and May 13, 2020, Island Leasing and the Trustee filed their replies.  [Dkt. nos. 22, 23.]  This matter came on for hearing on July 10, 2020.  The Bankruptcy Decision is hereby affirmed in part, reversed in part, and remanded for the reasons set forth below.

## BACKGROUND

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1).  Debtor Island Air, Inc. ("Debtor") operated an inter-island airline in Hawai`i.  Debtor leased its airplanes from Island Leasing, an entity that existed for the purpose of owning and leasing airplanes to Debtor.  The president and sole manager of Island Leasing, Paul Marinelli, was also one of Debtor's two directors through approximately June 2017.  [Bankr. Decision at 2-3; Island Leasing Opening Brief, App'x 10 (Decl. of Paul Marinelli ("Marinelli Decl.")) at

2

¶¶ 1, 13]  Island Leasing is owned by Larry Ellison, and Debtor is owned by, in part, an entity called PaCap Aviation Finance, LLC ("PAF").  [Marinelli Decl. at ¶ 11; Island Leasing Opening Brief, App'x 11 (Trial Decl. of Jeffery Koon Duk Au ("Au Decl.")) at ¶ 4.]  Jeffery Au is the manager of the manager of PAF.  [Au Decl. at ¶ 4.]  Mr. Au was also the Managing Director and Chairman of the Executive Committee for Debtor from March 28, 2016 to November 10, 2017.  [Au Decl. at ¶ 3.]  In addition to Mr. Au, the other key decision makers for Debtor were Mr. Marinelli (prior to July 2017) and David Uchiyama, the Chief Executive Officer ("CEO") and other director of Debtor.  [Bankr. Decision at 3; Island Leasing Opening Brief, App'x 9 (Decl. of David Uchiyama ("Uchiyama Decl.")) at ¶ 1; Marinelli Decl. at ¶ 16.]

As of May 2015, Debtor leased five ATR aircraft from Island Leasing in operation of its airline concern.  [Bankr. Decision at 3.]  Although Island Leasing owned the airplanes, Debtor owned parts and tooling for the aircraft ("ATR Spare Parts").  [Id.]  Facing a cash shortage and in doubt of its ability to meet its payroll obligation, Debtor attempted to sell the ATR Spare Parts.  [Id. at 4-5.]  On June 20, 2017, Debtor and Island Leasing executed a document titled "Assignment, Sale,

3

and Transfer of ATR 72-212 Aircraft Spare Parts" ("Assignment").[1] [Id. at 5.] Pursuant to the Assignment, Debtor would sell a portion of the ATR Spare Parts ("IL Rotables") to Island Leasing for $800,000. Island Leasing furnished payment to Debtor on June 21, 2017. [Id. at 5-6.] However, Island Leasing never took possession of the IL Rotables. Immediately after executing the Assignment, Debtor and Island Leasing entered into an oral agreement that Debtor would store, maintain, and try to sell the parts to a third party, and Island Leasing would receive its consideration in the form of cash, not the IL Rotables. [Marinelli Decl. at ¶ 20.] Approximately four weeks later, Debtor and Island Leasing agreed that Island Leasing would receive exactly $800,000 in satisfaction of Debtor's obligation under the contract. [Id. at ¶¶ 33-34.]

Debtor shortly thereafter sold the ATR Spare Parts to AAR Supply Chain, Inc. ("AAR") for $1.2 million as memorialized in an August 9, 2017 purchase order which identified Debtor as the seller of the ATR Spare Parts, and AAR as the buyer. [Bankr. Decision at 8-9.] The $1.2 million purchase price for the ATR Spare Parts was scheduled to be paid in three installments; Debtor and Island Leasing agreed that Debtor would

---

[1] The Assignment is available at Trial Exhibit P-K 5, [Bankr. Decision at 5 n.2,] and at Island Leasing Opening Brief, Appendix 26 (trial Exhibit D-IL 2033 which included the Assignment).

4

retain the first payment, and the two remaining payments would be delivered to Island Leasing.  [Id. at 9-10.]  On August 17, 2017, AAR sent its first $400,000 payment to Debtor, and Debtor sent its first shipment of parts to AAR.  [Id. at 13.]  Despite requests from one of Debtor's employees and Island Leasing, AAR refused to send the remaining $800,000 directly to Island Leasing, and insisted on following the terms of the purchase order.  [Id. at 13-14.]

In an October 12, 2017 email, Mr. Marinelli gave instructions to proceed with the transaction from Debtor to AAR, explaining that Island Leasing would sell the ATR Spare Parts back to Debtor, Debtor would sell those parts to AAR, AAR would pay Debtor, and Debtor would pay Island Leasing.  [Id. at 14 & n.7 (citing Trial Exh. P-K 41 (email from Mr. Marinelli, dated 10/12/17).]  Island Leasing accordingly sent Debtor an invoice for $800,000.  [Id. at 14-15.]  Another batch of parts was shipped, and on October 12, 2017, AAR paid $400,000 to Debtor, which Debtor deposited into its operating account.  The next day, Debtor sent $400,000 to Island Leasing.  [Id. at 16.]

On October 16, 2017, Debtor filed its bankruptcy petition under chapter 11.  On the same day, in what the bankruptcy court found to be a post-petition transfer, Debtor

5

sent another shipment of parts to AAR.[2] [Id. at 17 (citing AP 18-90007, dkt. no. 236 (Order on Plaintiff's Motion for Partial Summary Judgment)).] On Debtor's motion, the bankruptcy case was converted to a chapter 7 case on November 15, 2017, and the Trustee was assigned. [Id. at 19.] On November 27, 2017, Debtor shipped the remaining ATR Spare Parts to AAR without the approval of the Trustee or the bankruptcy court. [Id.] Mr. Marinelli sent an email to AAR requesting that AAR remit the remaining $400,000 payment directly to Island Leasing, which was refused. The disposition of the final $400,000 payment is at issue in the instant litigation. [Id. at 20.]

On June 15, 2018, the Trustee filed her First Amended Complaint, seeking: 1) to avoid Debtor's $400,000 transfer to Island Leasing as a preference ("Count I"); 2) a declaratory judgment that Island Leasing did not have a security interest in or title to the parts shipped to AAR post-petition, nor in the final $400,000 payment, and that the final payment is owed to the Trustee ("Count II"); and 3) to avoid the Debtor's post-petition transfer of parts to AAR and recover the funds as transmitted from AAR and Island Leasing ("Count III"). [Island Leasing Opening Brief, App'x 3 (First Amended Complaint).]

---

[2] The bankruptcy court ruled that Trial Exhibit P-K 169 "is a substantially accurate list" of the parts Debtor shipped to AAR post-petition. [Bankr. Decision at 17.]

The bankruptcy court ruled that the transaction between Island Leasing and Debtor constituted a secured loan despite being documented as a sale. Because the transaction was a loan, Debtor was the true owner of the ATR Spare Parts when they were sold to AAR. Therefore, with respect to Count I, the Trustee was able to avoid Debtor's $400,000 payment to Island Leasing as a preferential transfer. [Bankr. Decision at 25-31.] The bankruptcy court also found in favor of the Trustee with respect to Count II, finding that Island Leasing did not have a legal or security interest in the receivable constituting the final $400,000 payment. [Id. at 34-35.] For Count III, the bankruptcy court ruled that the Trustee was entitled to recover the value of the parts shipped to AAR post-petition from AAR and Island Leasing. However, because the Trustee did not prove the value of the parts that were shipped post-petition by a preponderance of the evidence, the bankruptcy court awarded the Trustee nothing. [Id. at 37-38.]

On appeal, Island Leasing argues that, because the bankruptcy court erred in recharacterizing the Assignment from a sale to a loan, this Court should reverse the Bankruptcy Decision with respect to Counts I and II. On cross-appeal, the Trustee argues that the bankruptcy court did not err with respect to Counts I and II and part of Count III, but erred in finding that the Trustee did not meet her burden to prove the

value of the parts shipped post-petition.  Therefore, the Trustee requests that the Bankruptcy Decision be reversed with respect to that part of Count III.

## STANDARD

"We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. . . .  [W]e review the bankruptcy court's evidentiary rulings for abuse of discretion."  In re Smith's Home Furnishings, Inc., 265 F.3d 959, 963 (9th Cir. 2001) (citations omitted).  "Under th[e clear error] standard, we accept findings of fact made by the bankruptcy court unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge."  In re Straightline Inv., Inc., 525 F.3d 870, 876 (9th Cir. 2008) (citations and quotation marks omitted).  "A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record."  In re Retz, 606 F.3d 1189, 1196 (9th Cir. 2010) (citation omitted).  The characterization of a transaction as a loan or sale is reviewed for clear error.  In re Golden Plan of Cal., Inc., 829 F.2d 705, 709 (9th Cir. 1986) (citation omitted).

**I.   Avoidable Preference**

> [W]e begin our analysis of [11 U.S.C.] § 547(b) by examining its text and background.
>
> 11 U.S.C. § 547(b) states:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
>
> > (1)  to or for the benefit of a creditor;
> >
> > (2)  for or on account of an antecedent debt owed by the debtor before such transfer was made;
> >
> > (3)  made while the debtor was insolvent;
> >
> > (4)  made—
> >
> > > (A)  on or within 90 days before the date of the filing of the petition; . . .
> >
> > . . . .
> >
> > (5)  that enables such creditor to receive more than such creditor would receive if—
> >
> > > (A)  the case were a case under chapter 7 of this title;
> > >
> > > (B)  the transfer had not been made; and
> > >
> > > (C)  such creditor received payment of such debt to the extent provided by the provisions of this title.

"The purpose of this provision is to discourage creditors 'from racing to the courthouse to dismember the debtor during his slide into bankruptcy' and to 'facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor.'" Valley Bank v. Vance (In re Vance), 721 F.2d 259, 260 (9th Cir. 1983) (citing H.R. Rep. No. 95-595, pt. 3, at 177-78 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6138).  Section 547(b) furthers this goal by treating a debtor's bankruptcy estate as

>having been established ninety days prior to the debtor's filing of bankruptcy, which would have the incidental effect of making the debtor insolvent during that same time period.  See County of Sacramento v. Hackney (In re Hackney), 93 B.R. 213, 218 (Bankr. N.D. Cal. 1988) (explaining the policy purpose behind preference statutes).  Since an insolvent debtor has no equity in the bankruptcy estate, any payments made during the ninety-day period are considered to have been made by the other creditors of the estate, not the debtor.  Id.  In order to prevent the creditors from losing their interests in the bankruptcy estate via the debtor's payments during the ninety-day period, the preference statute allows the creditors of the estate to recover certain payments made by the debtor during the preference period.  Id.

In re Silverman, 616 F.3d 1001, 1006 (9th Cir. 2010) (some alterations in Silverman).

## II. Avoidable Post-Petition Transfer

>Under 11 U.S.C. § 549, a trustee may "avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and . . . (2) . . . (B) that is not authorized under this title or by the court."  11 U.S.C. § 549(a)(1), (2)(B) (West 2004).  "If a trustee seeks to recover a postpetition transfer under section 549, . . . . the trustee must show that a transfer occurred after the filing of the bankruptcy petition and that the transfer was not authorized by either the bankruptcy court or the [Bankruptcy] Code."  Mora v. Vasquez (In re Mora), 199 F.3d 1024, 1026 (9th Cir. 1999) (citations omitted).
>
>"A 'transfer' is broadly defined by the Code as 'every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property. . . .'"  Id. (quoting 11 U.S.C. § 101(54) (1994)). . . .

Straightline, 525 F.3d at 877

> "The bankruptcy court's choice of remedies is reviewed for an abuse of discretion." Bankr.Receivables Mgmt. v. Lopez (In re Lopez), 345 F.3d 701, 705 (9th Cir. 2003) (citing Stone v. City and County of San Francisco, 968 F.2d 850, 861 (9th Cir. 1992)). Section 550(a) of the Bankruptcy Code provides that "to the extent that a transfer is avoided under section . . . 549 . . . , the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer . . . ." 11 U.S.C. § 550(a) (West 2004).
>
> . . . .
>
> Section 550 provides for recovery of the property transferred and avoided under § 549 or for recovery of the value of that property. Id. . . .
>
> Generally, the purpose of § 550(a) is "'to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred.'" Acequia, Inc. v. Clinton (In re Acequia, Inc.), 34 F.3d 800, 812 (quoting Morris v. Kan. Drywall Supply Co. (In re Classic Drywall, Inc.), 127 B.R. 874, 876 (D. Kan. 1991)). . . .

Id., at 882-83.

## DISCUSSION

**I. Count I**

The following elements of an avoidable preference are not in dispute: 1) that Island Leasing was a creditor of Debtor; 2) Debtor was insolvent at the time it transferred the $400,000 in question to Island Leasing; 3) the timing element is

11

satisfied; and 4) Island Leasing received more because of the avoidable preference than it would under the circumstances outlined in § 547(b)(5)(A)-(C). [Bankr. Decision at 25.] Island Leasing's argument on appeal that the bankruptcy court erred in finding that the transaction was a loan is construed as an argument that one or more of other the elements of a preference is not met.

### A. Parol Evidence

Island Leasing argues the bankruptcy court erred by considering parol evidence. The parol evidence rule is a rule of substantive law, State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai`i 315, 324, 978 P.2d 753, 762 (1999), therefore Hawai`i law applies. In Hawai`i,

> [w]here a writing is found to be clear and unambiguous and "represents the final and complete agreement of the parties," the parol evidence rule bars evidence "of prior contemporaneous negotiations and agreements that vary or alter the terms of a written instrument." [State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai'i 315, 324, 978 P.2d 753, 762 (1999).] (citation omitted). Thus, "[o]nce the parties execute an instrument which contains their whole agreement, their previous negotiations and agreements are legally ineffective and evidence relating to those previous negotiations or agreements is irrelevant regardless of who offers it." Akamine & Sons, Ltd. v. Am. Sec. Bank, 50 Haw. 304, 310, 440 P.2d 262, 266 (1968).

United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc., 113 Hawai`i 127, 140-41, 149 P.3d 495, 508-09 (2006) (some alterations in United Pub. Workers).  Also, the

> rights and obligations flowing from a transaction are governed by its substance rather than its form or the appellation selected by a party. Kawauchi v. Tabata, 49 Haw. 160, 171, 413 P.2d 221, 227 (1966).  And as "neither artifice nor form nor superficial declaration of intention will successfully obscure the true nature of . . . [a] transaction," Hess v. Paulo, 38 Haw. 279 at 286 (1949), we are obliged to seek the substance of the agreements in question from the evidence in the record.

Dang v. F & S Land Dev. Corp., 62 Haw. 583, 588, 618 P.2d 276, 280 (1980) (alterations in Dang).

As the bankruptcy court correctly found, the Assignment was not a complete statement of the agreement between the parties, as evidenced by the subsequent agreements detailing the time and manner in which Debtor would furnish its consideration.  See, e.g., Marinelli Decl. at ¶ 20.  Also, although the bankruptcy court was not limited to post-Assignment evidence due to the lack of integration, evidence sufficient to support the bankruptcy court's finding that the transaction was a loan can be found in the parties' subsequent conduct, without regard to prior or contemporaneous agreements.  See, e.g., Marinelli Decl. at ¶ 20.  The bankruptcy court did not err in considering the parties' behavior to determine the true substance of the Assignment.

13

B. **Loan or Sale**

In <u>Burnett v. Ala Moana Pawn Shop</u>, the Ninth Circuit, relying in part on <u>Kawauchi v. Tabata</u>, 49 Haw. 160, 255, 413 P.2d 221, 231 (1966), affirmed the district court's finding that certain pawn shop transactions, although documented as sales, were actually loans. 3 F.3d 1261, 1262 (9th Cir. 1993). In <u>Burnett</u>, the Ninth Circuit considered that: 1) the negotiated amount of money was tied to the borrower's "need for cash rather than the fair market value of his property"; 2) the amount loaned was for less than fair market value of the property; and 3) the Ninth Circuit disregarded the fact that the loan was non-recourse in light of the first two factors. <u>Id.</u> However, even in light of the factors considered in <u>Burnett</u> and others urged by Island Leasing, the bankruptcy court did not err in finding the substance of the interaction between Debtor and Island Leasing constituted a secured loan.

Turning to the first <u>Burnett</u> factor, the transaction amount was based on Debtor's need for cash rather than the fair market value of the IL Rotables. Regardless of whether the fair market value of the IL Rotables happened to be $800,000 which is subject to reasonable dispute, <u>see</u> Au Decl. at ¶¶ 31-32 (stating that Jim Donovan resigned from Debtor's board of directors because he believed $800,000 was too low), the evidence supports the bankruptcy court's finding that the decision to transfer

14

$800,000 from Island Leasing to Debtor was based on Debtor's need for cash.  See Uchiyama Decl. at ¶ 4(stating Debtor was in need of $800,000 at that time); Au Decl. at ¶¶ 20-21 (stating, Debtor needed approximately $800,000 around June 21, 2017); but see Marinelli Decl. at ¶¶ 8-10 (stating he could not recall how the $800,000 price was determined, other than that Debtor approached Island Leasing and asked it to buy some aircraft parts for $800,000 after its request for a loan from Island leasing was denied and he believed the price reflected the fair market value).

       Whether the transfer occurred at fair market value poses a closer question.  The bankruptcy court found that $1.2 million was the fair market value of the ATR Spare Parts, [Bankr. Decision at 9,] but it did not make a similar finding with respect to the fair market value of the IL Rotables.  Regardless, even if $800,00 was a fair price, under these circumstances Debtor's need for cash outweighed the reasonableness of the price.  The evidence strongly supports the bankruptcy court's finding that the $800,000 figure was determined by Debtor's need for cash to make payroll, and will not be undermined by Debtor's ability to bundle goods to equal that approximate amount.

       Closely related to the question of fair market value is the question of whether Debtor had an incentive to

15

"repurchase" the property.  In Burnett, the Ninth Circuit noted that the difference between the amount accepted for the property and the fair market value provided an incentive for the borrower "to 'repurchase' the property."  3 F.3d at 1262.  A course of conduct for Debtor to repurchase the IL Rotables was proposed by Mr. Marinelli, and although disputed by Island Leasing, the parties' follow-through with that proposal is supported by the evidence.  See Bankr. Decision at 15, 23-24 (noting that Island Leasing issued an invoice to Debtor, and Debtor and Island Leasing acted as though Debtor was the owner of the IL Rotables when AAR insisted on transacting the sale with Debtor as the vendor of record and Debtor issued the corresponding warranties).  AAR's insistence on dealing with Debtor suggests Debtor was incentivized to "repurchase" the property and Island Leasing was incentivized to return the property to Debtor, thereby further indicating the substance of the transaction was that of a loan because the parties had built-in reasons to unwind the transaction.  See id. at 17 (noting "the evidence overwhelmingly shows that Island Leasing authorized the Debtor to transfer the IL Rotables to AAR for the purpose of giving AAR title to the IL Rotables").

        Three of the factors argued by Island Leasing, namely that: 1) Debtor was not obliged to, nor did it promise to, repay the loan; 2) Debtor would be required to make up any deficiency;

16

and 3) the risk of loss was allocated to Island Leasing, are closely related. All three factors are simply attributes of a non-recourse loan. See Sollberger v. Comm'r of Internal Revenue, 691 F.3d 1119, 1122 n.3 (9th Cir. 2012) ("A 'nonrecourse loan' is a loan in which a lender may seek recovery only against the collateral, not the borrower's personal assets, if the loan is not repaid." (citations omitted)). The non-recourse nature does not make the transaction at issue any less of a loan. See Burnett, 3 F.3d 1262 (explaining that the transactions were loans regardless of the plaintiff's personal liability for the debt). To the extent the risk of loss is relevant in light of the non-recourse nature of the loan, its relevance is minimal in light of the absence of corresponding indicia of ownership. While Debtor purportedly sold the IL Rotables, in the subsequent oral and email agreements with Island Leasing, it received the right to all of the profits resulting from a sale to a third party. See Marinelli Decl. at ¶¶ 34-35. Indicia of ownership includes, *inter alia*, the risk of profit or loss. Hinkle Nw., Inc. v. S.E.C., 641 F.2d 1304, 1307 (9th Cir. 1981). That is, the owner would typically have the right to profit from the sale of its property, just as it would suffer a loss. Here, the rights of ownership were divided between the Island Leasing and Debtor, neither holding the full bundle. Therefore, under these factors the bankruptcy court's

finding that the transaction between Debtor and Island Leasing was a loan, rather than a sale as documented, is not clearly erroneous.

Thus, the Burnett analysis does not demonstrate clear error on the part of the bankruptcy court. The Bankruptcy Decision is affirmed with respect to Count I.

## II. Count II

Island Leasing argues the bankruptcy court's decision with respect to Count II should be reversed because it is based entirely on the ruling on Count I. Because the ruling on Count I has been affirmed, the Bankruptcy Decision is also affirmed with respect to Count II.

## III. Count III

With respect to Count III, the Trustee argues the bankruptcy court erred in finding that the Trustee had proven which items were transferred post-petition, but that the Trustee had not sufficiently proven the value of those items, and therefore awarded no recovery pursuant to § 550. In a recovery action brought under § 550,

> [i]t is well established that in deciding to award an estate the value of property, a bankruptcy court must decide "whether there is conflicting evidence as to the value of the property and whether the value of the property is readily determinable." 5 Collier on Bankruptcy 550.02[3][a], at 550-9-10 (15th ed. re 2008).

18

> Where the value of the property cannot be easily or readily determined—as is the case here—the correct remedy is to return the property, not award an estimate of the value of the property. Id.; accord In re Bremer, 408 B.R. [355,] 360 [(B.A.P. 10th Cir. 2009), aff'd sub nom. In re Trout, 609 F.3d 1106 (10th Cir. 2010)]. . . .

USAA Fed. Sav. Bank v. Thacker (In re Taylor), 599 F.3d 880, 892 (9th Cir. 2010).

The bankruptcy court effectively, although not expressly, found that the value of the property at issue cannot be easily or readily determined. [Bankr. Decision at 38.] Therefore, the appropriate remedy is to return the property. See e.g., Hopkins v. Idaho State Univ. Credit Union (In re Herter), 464 B.R. 22, 31 (Bankr. D. Idaho 2011) (ruling "where the record lacks evidence of a transferred property's market value, or where there is conflicting evidence on that value, the return of the property transferred, rather than an award of its value, is the appropriate remedy in an avoidance action" (citing USAA Fed. Sav. Bank v. Thacker (In re Taylor), 599 F.3d 880, 891 (9th Cir. 2010))), aff'd, No. 4:12-cv-180-BLW, 2013 WL 588145 (D. Idaho Feb. 13, 2013).  The bankruptcy court erred in determining that recovery of the value of the property was the appropriate remedy and that the value could not be determined. For these reasons, the Bankruptcy Decision is reversed with respect to Count III.  On remand, the bankruptcy court "must decide whether there is conflicting evidence as to the value of

the property and whether the value of the property is readily determinable," see Taylor, 599 F.3d at 892 (citation and quotation marks omitted), and proceed according to that determination.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's Memorandum of Decision after Trial, dated November 25, 2019, is hereby AFFIRMED IN PART AND REVERSED IN PART. The Bankruptcy Decision is AFFIRMED with respect to Counts I and II, and REVERSED with respect to Count III. The case is HEREBY REMANDED to the bankruptcy court to conduct further proceedings consistent with this Order. The Clerk's Office is DIRECTED to remand the case on **November 13, 2020**, unless a timely motion for reconsideration of this Order is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, October 28, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

ISLAND LEASING LLC VS. ELIZABETH KANE, ET AL.; CV 19-00655 LEK-WRP; ELIZABETH A. KANE, TRUSTEE VS. ISLAND LEASING, LLC, ET AL; CV 19-00681 LEK-WRP; ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING BANKRUPTCY COURT ORDER